Jack WILLS, Plaintiff,

v.

BLACK AND WEST, ARCHITECTS, a co-
partnership consisting of Ralph M. Black
and Robert E. West, Defendants.

No. 38336.

Supreme Court of Oklahoma.

Sept. 22, 1959.

Robert W. Raynolds of Raynolds & Hastain, Tulsa, for plaintiff in error.

Dyer, Powers & Gotcher, Tulsa, for defendants in error.

IRWIN, Justice.

This is an action for damages allegedly caused by the neglect and failure of defendants, an architectural copartnership, to perform their contractural obligations under an architect's agreement between plaintiff and defendants. Trial was before a jury and at the close of plaintiff's evidence, the trial court sustained defendants' demurrer and dismissed the action on the ground it was barred by the Statute of Limitations, 12 O.S.1951 § 91 et seq. Reference to the parties will be by their trial court designation.

### Issue

The only issue presented to this court for review is: Did the court err in sustaining defendants' demurrer, discharging the jury and dismissing the action on the ground the same was barred by the Statute of Limitations?

### Contentions

Plaintiff contends there was a fiduciary relationship between them, and it was the duty of defendants to make full disclosure of their failure and neglect in performance of the contract and by their failure and neglect in performance of the contract and concealment of their malfeasance, plaintiff had two years after discovery of the fraudulent concealment in which to institute the action and that upon the pleadings and evidence offered by plaintiff, it was a question of fact for the jury to determine whether the statute of limitations had intervened against the plaintiff's action.

The defendants contend the action was barred by the statute of limitations for the reason that the cause of action, if any, accrued in August, 1946, when defendants certified the building was completed and accepted by plaintiff, and more than five years had elapsed from the accrual of the cause of action on the contract; and that the statute of limitations had run against plaintiff's claim in tort, if any, since more than two years had elapsed since the commission of the tort; and that plaintiff's evidence was insufficient to toll the statute.

### Pleadings

Plaintiff alleged that in September, 1945, the defendants submitted their letter of proposal in connection with the preparation of plans and specifications, contracts and supervision for the construction of a building in Tulsa, Oklahoma. A copy of an Architect's Contract was attached to the letter and the proposal of the defendants was accepted by the plaintiff. Plans and specifications were thereafter submitted to the plaintiff, a contract was let and the building was constructed and completed, pursuant to defendants' direction, during the early part of August, 1946. That the defendants represented that said building would be designed and planned in a workmanlike and sufficient manner and in accordance with the rules and regulations established for construction of similar structures but that said building was not designed and constructed in accordance with such representations. That in less than a year after completion, the roof began to leak and upon inquiry, defendants advised plaintiff the roof was well constructed, that there was nothing structurally wrong; that said roof conformed to the building code and was adequate and any defect could be charged to the roofing contractor. That

such statements were untrue and made by defendants to cause plaintiff to forego inquiry about the roof structure and the plaintiff relied upon such representations.

Plaintiff further alleged that in 1955 the roof leaked so badly that he called defendants and after examining the roof, the defendants denied any liability for the first time. That plaintiff thereafter determined the roof had not been constructed or designed in a proper manner nor had adequate or proper materials been used; that the joists were not of proper quality or properly spaced; that the bridging of the joists was not in accordance with good practice and design and the joists have become misplaced as a result; that the roof is warped, cracked and cannot be maintained or repaired. That the sheetrock used on said roof is not recommended or used by competent architects, engineers or building suppliers nor approved for such use and that the defendants knew or should have known that such material was wholly unsatisfactory.

Plaintiff further alleged that due to the misrepresentations and the concealment by the defendants, he delayed investigation and action and did not discover that the defendants had wholly failed in their obligations and had concealed from him the true condition of said roof until the fall of 1955.

The defendants by answer, among other allegations, plead the Statute of Limitations. In as much as the trial court sustained defendants' demurrer and dismissed the action on this ground, the remaining allegations set forth in the answer will not be considered.

### Evidence

The plaintiff testified as to negotiations leading up to the employment of the defendants, as architects, to prepare plans and specifications for the building, to secure bids on the construction and let the contract therefor. That the building was completed and he started moving in on August 15, 1946. That the roof began leaking in 1947, but did not get bad until the year of 1951 at which time it became much worse and the roofing company made five calls to make repairs during that year; thirteen calls in 1954 and fifteen calls in 1955; that it got to the point where it leaked every time it rained. He testified that practically every time the roof leaked he called the defendants and that he went to their office one time, but the record is silent as to what conversation was had with the defendants or what representations or statements, if any, were made by them prior to the fall of 1955. In 1955, Mr. Black, one of the defendants, at the special instance of the plaintiff came to the building and the two of them went upon the roof and examined it and the plaintiff at that time said to the defendant Black, "I feel in my own mind that it is your fault". Defendant Black then sent R. W. Jackson, a structural engineer, to make an examination and he reported by letter to the plaintiff that the roof would safely support the additional load of a ten year bonded roof with slag surfacing and a half-inch insulation board.

The plaintiff offered the testimony of David Graham, a consulting engineer, and John Cushing, an architect and architectural engineer.

These witnesses testified that the joists were not of proper material; they were not properly spaced; they were warped, one was split; and the bridging was poorly done, improper material used and nails not driven properly. They further testified that the sheetrock used on the roof was not the proper material and should not have been used. That the roof was in such condition that it could not be repaired but would have to be torn away and a new roof constructed. Both of these witnesses, as well as the plaintiff, testified that the spacing of the joists, the bridging and the sheetrock could be seen with the naked eye from the rear of the building. That none of the joists or bridging were concealed or covered but were plainly visible to any one who took the time to look. In their opinion the plans and specifications were defective and such defects caused the roof to leak.

### Conclusions

In considering the responsibility or liability of architects in the performance of their duties, in Smith v. Goff, Okl., 325 P.2d 1061, 1062, we held:

"Where an architect agrees to prepare plans and specifications for the construction of a building, he is required to exercise ordinary professional skill and diligence and to conform to accepted architectural standards; but his undertaking does not imply or guarantee a perfect plan or satisfactory results, and he is liable only for failure to exercise reasonable care and professional skill."

In the case at bar, the contract between the plaintiff and defendants specifically recited "the architect will endeavor to guard * * * but does not guarantee the performance." We therefore conclude defendants did not warrant or guarantee a perfect plan or satisfactory results and would only be liable to exercise reasonable care and professional skill in performing their services. If a cause of action existed at any time, it accrued at the time the building was completed and accepted by the plaintiff and since the plaintiff accepted the building in August, 1946, the breach of duty, if any, occurred at that time and the statutes of limitations began running, unless the defendants were guilty of false and fraudulent representation which tolled the statute.

In this connection the plaintiff contends that the defendants concealed from him the fact that he had a cause of action against them and by such concealment and false and fraudulent representations made by them, which he believed and relied upon, he was prevented from making an investigation and learning of the true conditions and therefore he had two years from the discovery of the concealment and fraud in which to file his action. Without question, fraudulent concealment constitutes an implied exception to the Statute of Limitations and one who perpetrates such concealment cannot take advantage of his wrongful acts. However, if defendants did not commit some actual artifice to prevent knowledge or some affirmative act of concealment or some misrepresentation to exclude suspicion and prevent inquiry, the statute is not tolled as the mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute. See Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okl. 239, 131 P. 174, L.R.A.1917B, 1253; Oklahoma Farm Mortgage Co. v. Jordan, 67 Okl. 69, 168 P. 1029; McClenahan v. Oklahoma R. Co., 131 Okl. 73, 267 P. 657; Kansas City Life Ins. Co. v. Nipper, 174 Okl. 634, 51 P.2d 741.

Although the plaintiff testified that he talked to the defendant, Black on many occasions, in fact, every time the roof leaked, the evidence does not disclose any representations or statements made by Black, or his codefendant; nor is there any evidence of any actions by the defendants which would mislead or lull the plaintiff into a sense of security from the date the building was completed in August, 1946, to the fall of 1955. The fact the roof leaked almost from the time it was completed and continued to leak was sufficient notice to the plaintiff that something was wrong. Yet the very things which he complains of in his action and in his evidence submitted, such as, warped and split joints, improper bridging, improper materials and wrong spacing of the joists, were visible to the naked eye from the rear of the building. The plaintiff was on the roof and saw the ridges, the sunken places in the roof and cracks; but so far as the evidence is concerned, it is silent of any representations or statements of the defendants or either of them with respect thereto, and there is no evidence of any act or omission on the part of the defendants that would prevent inquiry into their failure to perform the services agreed upon.

We therefore conclude the evidence was insufficient to submit to the jury the question of whether the Statute of Limitations had been tolled, and where the pleading and evidence reveal that a cause of action is barred by the Statute of Limitations and there is no evidence showing

cause for tolling the said statute, then the question of limitations is not one for the jury, and the trial court will be affirmed where it sustains demurrer to the evidence.

Judgment affirmed.