STATE OF NEW YORK, Appellant, v EARL H. LUNDIN et al., Defendants; WILLIAM B. HELLER et al., Respondents.

PENN YORK CONSTRUCTION CORP., as Successor to FOSTER-LIPKINS CORP., et al., Defendants and Third-Party Plaintiffs-Respondents, v PETER BRATTI ASSOCIATES, INC., et al., Third-Party Defendants-Respondents.

Third Department, February 3, 1983

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Richard J. Dorsey* and *William J. Kogan* of counsel), for appellant.

*Ross & Cohen* (*Frederick Cohen, Charles Fastenberg* and *Andrea Popik Taber* of counsel), for Penn York Construction Corp., defendant and third-party plaintiff-respondent.

*Wilson, Elser, Edelman & Dicker* (*James L. Fischer* of counsel), for Robert L. Thorson and others, respondents.

*Berman, Paley, Goldstein & Berman* (*Alvin Goldstein* of counsel), for Northrop Corporation, third-party defendant-respondent.

*Hesson, Ford, Sherwood & Whalen* (*Donald T. Ford, Jr.,* and *Daniel A. Whalen* of counsel), for S. R. Beltrone, Inc., third-party defendant-respondent.

*Altieri, Kushner & Miuccio* (*Denis B. Frind* of counsel), for Peter Bratti Associates, Inc., third-party defendant-respondent.

*Paul, Weiss, Rifkind, Wharton & Garrison* (*Nancy Kilson* and *Edward N. Costikyan* of counsel), for William B. Heller, respondent.

*Tunstead & Schechter* (*Michael S. Torre* of counsel), for the Georgia Marble Company, third-party defendant-respondent.

OPINION OF THE COURT

CASEY, J.

This action arose out of the alleged defective design and construction of the marble curtain wall on the Swan Street Building in the Governor Nelson E. Rockefeller Empire State Plaza in Albany. The State commenced the action, seeking damages for alleged breach of contract and negligence, by service of a summons with notice on the various defendants in July, August and September, 1979. Defendants are the architectural partnership and two individual partners, the general contractor and various insurers who had issued performance bonds in connection with the construction. Several subcontractors were impleaded by defendants. After the State served its complaint, defendants and third-party defendants moved to dismiss upon the ground that the actions were barred by the three-year Statute of Limitations governing negligence actions and the six-year Statute of Limitations governing breach of contract actions. Special Term granted the motions and this appeal ensued.

In support of their motions, defendants and third-party defendants submitted affidavits and documents establishing that most, if not all of the actual work on the Swan Street Building was completed prior to July 31, 1973, which was six years before the first of the defendants was served in this action. For example, the building was dedicated in January, 1972 and by April, 1972 the burden of security had been assumed by the Capitol Police. By June,

1972, the building was 100% occupied by the State and it was described as complete except for minor items. In June of 1972, the general contractor was authorized to cancel its fire insurance policy on the building, and as of July, 1973, the general contractor had not been on the project for some 10 months.

The State, on the other hand, contends that although most of the physical work had been completed by July 31, 1973, a substantial contractual relationship between the State and the general contractor and the State and the architect continued after that date. Indeed, the State contends that this relationship continued until the issuance of the final certificate of payment in July, 1977, which, the State argues, should be the accrual date for its causes of action.

The general rule in contract cases is that "the cause of action accrues and the Statute of Limitations begins to run from the time of the breach" (*Kassner & Co. v City of New York,* 46 NY2d 544, 550). The rule is somewhat different, however, in construction contract cases involving an owner's claims against an architect arising out of alleged defective construction of buildings. In such cases, the owner's causes of actions "however verbally classified, accrue for purposes of all Statutes of Limitations on completion of construction" (*Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389, 394). The rationale for using as the accrual date the completion of construction, rather than the actual date of the defective construction, appears to lie in the theory that the architect's duty to design a proper building is a continuous one that does not end until the building is completed (see *Sosnow v Paul,* 43 AD2d 978, affd 36 NY2d 780, citing *Siegel v Kranis,* 29 AD2d 477). Given the architect's expertise and the owner's need to rely on that expertise to see that the building is properly constructed, it would be unreasonable to require the owner to resort to litigation while construction is in progress and curative steps could be taken to remedy the defect (*County of Broome v Vincent J. Smith, Inc.,* 78 Misc 2d 889, 892).

This court has applied the completion of construction accrual date to construction contract cases involving engineers who design the construction project (*State of New*

*York v Ehasz,* 80 AD2d 671). Although general contractors are not professionals like architects and engineers, the contractual duty assumed by them continues until completion of construction, and the owners rely on their expertise to see that the project is completed according to the plans. We conclude, therefore, that completion of construction is also the accrual date for an owner's claims of defective construction against a general contractor (*Excelsior 57th Corp. v 303 Assoc.,* NYLJ, Sept. 7, 1978, p 6, col 2, affd 73 AD2d 849, mot for lv to app den 49 NY2d 705).

The point in time when construction was completed, of course, depends upon the facts and circumstances of each case. The courts have generally looked to the completion of the actual physical work (see, e.g., *Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389, *supra; State of New York v Ehasz,* 80 AD2d 671, *supra; Sosnow v Paul,* 43 AD2d 978, affd 36 NY2d 780, *supra*), but in *Board of Educ. v Celotex Corp.* (88 AD2d 713, affd 58 NY2d 684), an action by the owner against the architect, this court used the issuance of the final certificate of payment as the completion date, despite the fact that the physical work was finished some three years earlier. Since the contract therein "required the architect to conduct inspections to determine the dates of substantial and final completion and to issue a final certificate of payment", we concluded that "the final certificate [of payment] was not merely a ministerial act but represented a substantial contractual right of plaintiff owner and a *concommitant contractual responsibility of defendant architect in completing the project"* (*supra,* at p 714; emphasis added). Here, none of defendants had the contractual responsibility for issuing the final certificate. Rather, that responsibility lay with the State itself. The State's project manager, a third-party defendant, was obligated by its contract with the State to "conduct, in conjunction with the designing architects and engineers, final inspection of all units of construction, preliminary to acceptance, to ensure the conformance of all aspects of the work to contract requirements". The State's issuance of the final certificate of payment was, in our view, nothing more than the State's formal acceptance of an already completed project. Such acceptance served to trigger the running of

the contractual guarantees and signified the end of the period for making equitable adjustments in the contract prices. It cannot, however, serve to extend the completion date of the project for those parties whose contractual obligations concerning the construction itself had ended some five years earlier when the physical work was substantially completed and the building was fully occupied by the State.

The State points out that for a substantial period of time after the physical construction work was complete there were ongoing negotiations between the State and its general contractor concerning equitable adjustments to the contract prices based upon such factors as delays and changes in specifications. These negotiations, however, did not relate to the construction itself. Rather, they were concerned solely with the prices to be paid by the State for work that was already completed, and they occurred long after the general contractor had left the work site.

Although the parties' proof does not firmly establish a fixed date for the completion of the actual construction of the building, it does establish that the work was completed and the building occupied by the State before July 31, 1973. Since the State's actions were not commenced until July 31, 1979, more than six years have passed following completion of construction and, therefore, the State's causes of action, whether grounded in negligence or breach of contract, are barred.

The order should be affirmed, without costs.

MIKOLL, J. (dissenting). We respectfully dissent.

The holding of this court in *Board of Educ. v Celotex Corp.* (88 AD2d 713, affd 58 NY2d 684) is controlling here. Defendants' motions for summary judgment were improperly granted.

Special Term erroneously concluded that the Statute of Limitations in the instant case began to run from the date of physical completion of the work, which it concludes was prior to July 31, 1973. The court disregarded the explicit language of the agreement between the parties. The contract between the State and Foster-Lipkins, the general contractor, provided in section 101 of article 24 that: "Final

certificate will not be issued until all the labor and material required under the contract have been furnished and completed, all claims of the contract submitted and disposed of and all accounts for extra work and materials and allowances for omissions have been rendered, considered and, if agreed to, made a part of such certificate."

Section 102 of the same article states: "The final certificate will constitute the acceptance of the work by the State, except as to work thereafter found to be defective. The date of such certificate shall be regarded as the date of acceptance of the work."

The plain meaning of the contract language indicates that the Statute of Limitations did not commence to run until July 12, 1977, the date of the issuance of the final certificate of payment.

The conduct of the parties also supports the conclusion that Foster-Lipkins was involved in an ongoing contractual relationship with the State until May of 1977. If the relationship had been finished as of July 31, 1973, as found by Special Term, Foster-Lipkins would have applied for final payment at that time. Applications for payment were submitted by it on July 31, 1973, May 21, 1974, November 30, 1974, June 30, 1975 and May 9, 1977, totaling $1,000,000. It is clear then that the contractual relationship between the contractor and the State continued until all claims were settled and the final certificate of payment was issued. There was an improper grant of summary judgment to defendant Penn York (formerly Foster-Lipkins), defendant surety companies and third-party defendants.

The cause of action against the architects also did not accrue until the final certificate of payment was issued. It is conceded that they had performed no work with respect to the marble facade after September 1, 1972, but they continued with work on other facets of the Swan Street Building after that date. Their services were not limited to the marble facade but encompassed the entire building. The architects submitted vouchers for supervision services for this building in the period from August 5, 1974 to November 10, 1974, and entered into an agreement for

their fifth supervisory architectural services contract for this building on December 9, 1974. Significantly, too, it was their obligation to the State to participate in the final inspection of the building with construction manager Fuller who was responsible for issuing the final certificate of payment. Consequently, the cause of action against the architects did not accrue until the final certificate of payment was issued.

The order should be reversed and defendants' motions denied.

KANE and WEISS, JJ., concur with CASEY, J.; MAHONEY, P. J., and MIKOLL, J., dissent and vote to reverse in an opinion by MIKOLL, J.

Order affirmed, without costs.