761 P.2d 1068

**Robert M. DRYDEN and Lauralee Dryden, husband and wife, Plaintiffs/Appellants,**

v.

**Samuel BELL and Mita Bell, husband and wife; Dale Naegle, an unmarried man, Defendants/Appellees.**

No. 2 CA–CV 87–0088.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 9, 1988.

Reconsideration Denied March 22, 1988.

Petitions and Cross-Petitions for Review Denied Oct. 4, 1988.*

Feulner & Cornelio, P.C. by George J. Feulner and Carmine Cornelio, Tucson, for plaintiffs/appellants.

Molloy, Jones & Donahue, P.C. by Gary F. Howard, Phoenix, for defendants/appellees Bell.

Minnette Burges, Tucson, for defendant/appellee Naegle.

OPINION

LACAGNINA, Chief Judge.

Robert M. Dryden and Lauralee Dryden, husband and wife, appeal from a jury verdict and award in the amount of $8,591.00 against Samuel Bell and Mita Bell, and from a defense verdict in favor of Dale Naegle, arising from the design, construction and sale of 34 acres of land with improvements. Drydens brought an action against Bells for breach of contract, misrepresentation, breach of express and implied warranties, conversion, negligence, and consumer fraud. In addition, Drydens brought an action against Naegle, the architect, for defective design. The trial court directed verdicts in favor of Bells on the negligence claim, the consumer fraud claim, on all theories connected with the man-made lake and on the negligence and implied warranty theories connected with the dike. Drydens claimed damages under all theories totalling over $200,000. The jury returned a verdict in the amount of $8,591.00. The trial court denied Drydens' motion for additur and/or new trial.

* Gordon, C.J., of the Supreme Court, did not participate in the determination of this matter.

## ISSUES ON APPEAL

Drydens appeal from the court's denial of their motion for new trial claiming the trial court erred as follows:

1. They were entitled to an instruction and directed verdict characterizing Samuel Bell as a builder-vendor and that the sale of the house by a builder-vendor was therefore a commercial sale which carries with it certain implied warranties of good workmanship and of habitability.

2. The negligence claims against Bells were jury issues, specifically negligence per se for over 20 alleged building code violations concerning the structure and negligence claims for construction of the dike and the lake.

3. The claims against the architect for defective design of the roof were not properly presented to the jury for the following reasons:

a. The statute of limitations instruction was incorrect.

b. The contributory negligence instruction was given without evidence to support it.

c. The issue of implied warranties concerning the architect's design was a jury question, and Drydens were entitled to a jury instruction on that theory.

4. The conduct of counsel for Bells was such that Drydens were deprived of a fair trial and are entitled to a new trial for attorney misconduct.

5. The jury verdict was inadequate because the measure of damages instruction was not proper and there was evidence of undisputed damages under the theories accepted by the jury.

6. The trial court committed reversible error concerning the admission of evidence and the failure to reopen the presentation of evidence on the issue of realtor, Ann Ferro, her relationship to the Bells and her representations concerning the subject property, and in the giving and failing to give certain instructions.

We affirm as to all issues concerning defendants Bell. We reverse and remand for new trial on all issues concerning defendant Naegle for the reasons stated below.

## FACTS

In 1978, Samuel Bell, a retired rancher, began construction on 34 acres of land of a 4700 square foot main residence, a three-bedroom, two-bath, 1800 square foot foreman's residence, and a freestanding office with toilet, shower, kitchenette and pull-down beds. Bell developed 22 acres of the land into irrigated pasture separated by fences and constructed a lake to store surplus well water and collect runoff water from the roof of the main residence. He also constructed a man-made dike which ran along the north edge of the property bordering Tanque Verde Wash. Bell worked with an architect, Dale Naegle, who designed and prepared plans for the main residence to be constructed for Bell. Bell initially intended to build the house as his own personal residence and improve the acreage for his own use. He supervised the construction with the help of a carpenter employee, other employees and subcontractors for various phases of the construction. During the course of construction, Bell learned he could not live in the area because of serious health problems and listed the property for sale. He moved into the main residence in the spring of 1980 while some construction was still in progress and lived in the house part-time until it was sold to the Drydens in 1982. In November 1980, Bell listed the property for sale. Drydens executed a purchase agreement on March 30, 1982, with a closing date of June 1, 1982, and took possession July 1, 1982.

Bell testified that in the past he had built several houses which served as his personal residences plus some labor houses on his farms. None of these houses were built for sale. Bell also testified that he had rented a house in Tucson where he and his wife lived during construction of the subject improvements. His wife testified that she visited the construction site on almost a daily basis.

After taking possession, Drydens began noticing problems in the main residence

and with other improvements, including but not limited to the following:

1. The roof of the main residence leaked because of the gutter system, causing water damage.

2. The windows and sills leaked.

3. Electrolysis occurred in the pipes in the main residence causing deterioration and corrosion of the pipes resulting from joining dissimilar metals without dialectic unions.

4. There were problems with the electrical system.

5. There were problems with the water distribution system leading to the lake.

6. During the flood which occurred in October of 1983, several acres of land washed away which Drydens claim occurred because the dike did not adequately protect the land.

As a result of these problems experienced by Drydens, they claim damages of over $200,000.

### IMPLIED WARRANTIES CONCERNING BELL'S CONSTRUCTION

■ Drydens' claim the trial court erred in instructing the jury concerning the issue of whether Samuel Bell was a builder-vendor. We need not decide whether the instruction was erroneous because we find that the trial court erred in giving such an instruction in the first instance. There was no evidence that Bell was a builder-vendor. We dealt with this issue in *Dillig v. Fisher*, 142 Ariz. 47, 688 P.2d 693 (App.1984). In that case, Fisher, the builder, had previously worked as a general contractor and in that capacity had supervised the construction of approximately 40 homes. At the time he built the home which was the subject of the lawsuit in *Dillig*, he was not licensed as a contractor in Arizona and was not employed in any construction-related capacity. It was also undisputed that Fisher built the house with the intent that it would be his personal residence, but his intent subsequently changed, and prior to any occupation of the house, he listed the house for sale. In *Dillig*, we affirmed the

trial court's finding that based upon the facts in that case, the sale of the house was a commercial sale of a new residence by a builder-vendor and was therefore subject to an implied warranty that the house was constructed in a workmanlike manner and was habitable. The trial court could have found, from the evidence of Fisher's prior history, that he was a commercial builder.

In *Dillig* we stated that the critical issue in determining whether the sale was subject to the implied warranty of habitability was the seller's intent or purpose in constructing and selling the house. Because the evidence in this case is undisputed that Samuel Bell's intent when beginning construction was that it serve as his personal residence and subsequently changed his intent, for health reasons, and listed the house for sale, we find as a matter of law, he was not a builder-vendor. However, we note the following language in *Dillig:*

We agree that the rationale underlying the implied warranty of habitability supports its application to situations, such as the present one, where a completed structure which has never been occupied is placed on the market for sale. We see no basis for distinguishing between the mass builder and the occasional builder in this context, *nor do we deem it relevant that the house was originally constructed for the Fishers' personal use, and was the only house constructed by Fisher in Arizona.*

*Id.* at 50, 688 P.2d at 695 (emphasis added). As explained earlier in *Dillig*, a builder-vendor is "one who is engaged in the business of building, so that the sale is of a commercial nature rather than a casual or personal one. This commercial requirement however does not demand that the builder-vendor have a long and extensive experience in the construction industry." *Id.* at 49, 688 P.2d at 695. For that reason, a first time or occasional builder can be a builder-vendor in this context. Although the fact in *Dillig* that the house was originally constructed for personal use and was the only house constructed by the builder in Arizona was relevant, it was not determinative of the issue in light of Fisher's prior

history as a builder. However, in the present case, Bell was never engaged in the business of building. *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974). Therefore, Bell's original intent in constructing the residence is determinative.

## NEGLIGENCE CLAIMS AGAINST BELL

■ The trial court directed verdicts in favor of Bell on Drydens' claims for negligent construction and negligence per se as a result of his violations of certain building codes. The court also directed verdicts on Drydens' negligence claims concerning both the man-made lake and the dike. We affirm those rulings of the trial court as they relate to defendants Bell. We have held that Bell was not a builder-vendor and that this was not a commercial sale. It is also undisputed that Bell's intent at the time he began construction was that it serve as his personal residence. Because Bell did not construct the residence with the intention of selling it, he owed no duty to anyone regarding the quality of the construction. There being no duty, no claim of negligence can arise from his conduct. *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985). For the same reason, Drydens' negligence per se claim must also fail.

## CLAIMS AGAINST ARCHITECT NAEGLE

### A. Statute of Limitations Instruction.

■ The trial court instructed the jury concerning the statute of limitations on Drydens' claim against the architect, Naegle, as follows:

There is an issue in this case arising from a defense asserted by defendant Naegle and based upon what is called the statute of limitations. This is simply a provision of the law requiring that suit be commenced on certain types of claims within a prescribed period of time. Otherwise, suit is barred or precluded.

In a case like this one, the time limitation placed upon the plaintiffs began to run when the plaintiffs first knew, or by the exercise of reasonable care should

have known, that there was negligence on the part of the architect Naegle.

In this instance, the applicable limitation period is two years, and the defendant Naegle claims that suit is barred because an occupant of the house knew, or by the exercise of reasonable care, should have known more than two years ago before the commencement of this suit against defendant Naegle, the architect, on April 20, 198[4], that the defendant Naegle was negligent.

We hold this instruction was wrong as a matter of law. The applicable statute of limitations was the two-year statute under A.R.S. § 12–542, and it could not begin to run in this case until 1) the Drydens sustained some injury from the alleged negligence of Naegle, *Arizona Management Corporation v. Kallof*, 142 Ariz. 64, 688 P.2d 710 (App.1984), and 2) until Drydens were able to bring suit against the Bells. *Greismer v. Greismer*, 116 Ariz. 512, 570 P.2d 199 (App.1977). Bells' claim that the Drydens knew or should have been able with reasonable diligence to discover any defects back in 1980 or 1981 upon inspecting the property, even if proven to be true, is without merit. They had no cause of action at that point. Only after purchase and possession of the property could they have discovered the defects resulting from the negligent design of the roof. This occurred in July of 1982. Within two years following this date, Drydens filed their second amended complaint. Bell's testimony that he had noticed a leak in the roof of one of the bedrooms is not evidence of any defective design. It is not indicative that any design caused that leak. The action brought within two years of the time Drydens took possession of the property is within the statute of limitations, and there was no question of fact for the jury to decide regarding this issue.

### B. Contributory Negligence Instruction.

The court gave the standard instruction concerning contributory negligence on Drydens' claims against Naegle. We find there was no evidence to support that instruction. Nothing in either Naegle's testimony or elsewhere in the record suggests

any negligent conduct on the part of Drydens which contributed to their damages.

## C. Implied Warranty.

We disagree with Naegle that Drydens waived the issue of failure to give an implied warranty instruction because they failed to object to the directed verdict on that issue. We have reviewed the record and find that when the court ruled on the directed verdict, it followed an avowal by counsel for Drydens that the issue had not yet been ruled upon, and that it was not something to which they had stipulated. The ruling was made in the face of objections by counsel and has not been waived. Although the record is unclear on this point, it appears that the trial court directed a verdict against Drydens on this issue because of lack of privity. This was clearly error in light of the supreme court's decision in *Donnelly Construction Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984).

### ATTORNEY MISCONDUCT

The Drydens claim they were deprived a fair trial as a result of misconduct by counsel for defendant Bell. We have reviewed the specific instances of alleged misconduct and find that there was no reversible error. A number of errors were cured by the court sustaining counsel's objections (arguments during opening statement). Others were cured by admonitions by the court during trial or during the court's later instructions (view of the property, amendment to pleadings), or were harmless in light of the legal theories involved, which were either the subject of directed verdicts or were resolved by the jury (value of property). Others were the subject of proper objections based upon relevancy (reference to defendant Robinson no longer being in the case, mention of a witness not listed in interrogatories). Finally, we are left with the references made to Drydens' car, and references to an absent witness, Tribolet. Apparently, Drydens had parked their Mercedes Benz automobile some distance away from the courthouse and, during the trial, counsel for defendant Bell made an allusion to that fact. While we may not agree that it was "fair game" to discredit their claim of poverty by mentioning the Mercedes in the presence of the jury, it was certainly harmless. Counsel for Drydens had the opportunity to and did have the question read back in order to allow Dr. Dryden to explain his intentions and, further, Drydens have failed to show any prejudice from this reference.

As to Mr. Tribolet, a witness defendants were precluded from calling to testify as an impeachment witness in order to refute Mrs. Dryden's claim that he (Mr. Tribolet) told her he had been called out to repair the roof when the Bells owned the property, we fail to see any prejudice. Mrs. Dryden later recanted that statement, and the jury was presented with sufficient inconsistencies concerning Mr. Tribolet's alleged statements from both Dr. and Mrs. Dryden. We find no error in defense counsel's actions in placing Mr. Tribolet in the back of the courtroom, calling this to Mrs. Dryden's attention when she was on the stand and offering to put Tribolet on the stand out of order, presumably to impeach her testimony.

### MISCELLANEOUS

Drydens further argue that the jury verdict was inadequate because the measure of damages instruction was not proper and because there was evidence of undisputed damages under the theories accepted by the jury. The instruction complained of pertained to claims which we have held were properly the subject of a directed verdict. Further, the record shows that there were no undisputed damages under any theories accepted by the jury for which Drydens were not compensated.

Drydens also argue that the trial court failed to admit certain evidence, admitted certain evidence that was irrelevant and failed to reopen testimony on issues concerning the realtor, Ann Ferro, her relationship to the Bells and her representations concerning the subject property, for which Drydens made no offer of proof. The court's decision on particular evidentiary rulings were within its discretion, and

we find no abuse of that discretion in this case. Finally, Drydens' claim of error in the giving or failing to give certain instructions necessarily fails as the result of our rulings in this case.

Affirmed in part, reversed in part, and remanded.

HOWARD, P.J., and HATHAWAY, J., concur.