The SAMUEL ROBERTS NOBLE
FOUNDATION, INC.,
Appellant,

v.

Alonzo VICK d/b/a Southern Oklahoma
Testing and Engineering, Appellee.

No. 73757.

Supreme Court of Oklahoma.

Oct. 13, 1992.

**620**

George D. Davis, Connie M. Bryan, McKinney, Stringer & Webster, P.C., Oklahoma City, Michael A. Cawley, Thompson & Cawley, Ardmore, for appellant.

Patrick M. Ryan, Phillip G. Whaley, Ryan, Corbyn & Geister, Oklahoma City, for appellee.

SUMMERS, Justice:

The new administration building for the Noble Foundation in Ardmore was completed in August, 1984. Almost immediately the owners noticed signs that the foundation and slab had moved. This appeal deals only with the owner's suit against the soil engineer, filed January 23, 1989, and specifically with whether the Foundation's claims based on theories of breach of contract and/or professional negligence are barred by the statute of limitations. We hold that the District Court's order dismissing the case on that basis was correct as to the tort aspect, but in error as to that part of the claim based on contract. We affirm in part, reverse in part, and remand.

## I. FACTS AND PROCEDURAL POSTURE

Defendant Alonzo Vick was the soil engineer who contracted with the Plaintiff Samuel Roberts Noble Foundation, Inc. to perform investigation and analysis in connection with the construction of the new building. He performed tests on the soil prior to the beginning of construction and gave an opinion as to what type of foundation should be used, for the benefit of the architect and general contractor. He completed his work and report in July 1983. In February of 1984 the general contractor consulted Vick again, and Vick furnished a report including test results on fill under the floor slab. The building was completed in August 1984.

It immediately began to show signs of an infirm foundation. Tiles popped up and doors began to stick. Plaintiff sued all parties involved in the construction[1] after getting an independent company to evaluate the problem. This suit, sounding in both contract and tort, was brought in January 1989.

Vick moved for summary judgment based on the statute of limitations. He asserted that the contract theory was barred by the five-year statute on written contracts, and that the tort theory was barred by the two-year period, both as set forth in 12 O.S.1991 § 95. Vick stated that *his* contract was fully performed in July 1983, that the Foundation discovered the problem in 1984, and therefore the January, 1989 suit was barred as to both theories.

The Foundation urged that the statute of limitations for a construction contract does not begin until the construction is completed. Because it was completed in August 1984, the Foundation urged that suit for breach of contract was brought within five years and therefore timely. As for the tort action, the Foundation urged that although it was earlier aware of problems, it did not know of the exact source of the problems until 1987, and thus its claim in negligence was also timely.

The trial court ruled limitations barred the claim on both theories, and rendered judgment for Defendant. The Foundation filed a motion to reconsider, urging that newly-discovered evidence showed that Vick's contractual obligation was ongoing at least until February 1984. The trial court left the result undisturbed. Plaintiff appealed. The Court of Appeals reversed and reinstated the case, relying on *Wills v. Black & West Architects*, 344 P.2d 581 (Okla.1959) and 12 O.S.1991 § 109. We have granted certiorari.

## II. THE CONTRACT ACTION

In its petition the plaintiff Foundation alleged the breach of a written contract entered into with defendant Vick for engineering work. Title 12 O.S.1991 § 95 (1st) states that an action upon any contract, agreement or promise in writing shall be

---

1. The architect and engineer for the building, though named as defendants, are not parties to this appeal.

brought within five years from the accrual of the action. Vick asserted that his contract was completed in July, 1983, and thus the action brought in January 1989 was time-barred. The Foundation, on the other hand, urges that Vick's contract was simply part of the general construction contract. The Foundation asserts that the limitations period for such construction contracts does not begin to run until the construction is completed.

Generally a cause of action accrues at the moment the party owning it has a legal right to sue. *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143, 146 (Okla.1977). When applied to construction contracts the *general rule* is that the limitations period does not begin until the work is completed. *Roberts v. Richard & Sons*, 113 N.H. 154, 304 A.2d 364, 365 (1973). The completion of the construction is the accrual date for a plaintiff's claim for breach of contract against a general contractor. *State v. Lundin*, 91 A.D.2d 343, 459 N.Y.S.2d 904, 906–7 (1983). The rationale behind this rule is that there is no breach for defective performance if the defects can be remedied by the date of completion. *Id.* In *Wills v. Black & West*, 344 P.2d at 584, we applied that general rule when dealing with an architect who had contracted to plan and supervise a construction project. Relying on the date of completion, the trial court dismissed the action because more than five years had passed. We affirmed the dismissal, holding that the action was barred by the statute of limitations for written contracts.

The Foundation urges that this general rule should be applied to Vick. The Foundation apparently considers Vick's contract to be part of the entire construction contract. With this in mind, we first turn to the question of whether the general rule is the law of Oklahoma. In recent years there has been some judicial deviation from the rule. Many courts hold, as stated above, that the action accrues at the time of the breach, and the breach necessarily occurs at the completion of the building. *See Roberts*, 304 A.2d at 365; *Twin Falls*

*Clinic v. Hamill*, 103 Idaho 19, 644 P.2d 341, 345 (1982); *Burke v. Hamilton Beach Division Scovill Manu. Co.*, 424 A.2d 145, 149 (Me.1981); *State v. Lundin*, 459 N.Y.S.2d at 906; *South Burlington School District v. Goodrich*, 135 Vt. 601, 382 A.2d 220, 222–23 (1977).

But others hold that it is completion of the particular subcontract in question which starts the running of the time period as to that subcontract. *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 733 P.2d 652, 660 (Ariz.Ct.App.1986); *State v. Holland Plastics Co.*, 111 Wis.2d 497, 331 N.W.2d 320, 325 (1983); *Beckenstein v. Potter and Carrier*, 191 Conn. 150, 464 A.2d 18, 22 (1983) (each of the above three cases holding that on contract action for faulty roof, time period began running on completion of roof). A third approach is that the limitations period begins upon substantial completion of the project. *Mahony–Troast Constr. Co. v. Supermarkets Gen. Corp.*, 189 N.J.Super. 325, 460 A.2d 149, 151 (1983); *Fort Oglethorpe Assoc. II Ltd. v. Hails Constr. Co.*, 196 Ga.App. 663, 396 S.E.2d 585, 586 (1990).

Finally, some courts have extended the "discovery rule" to the arena of contracts, and hold that the statute of limitations begins to run when the owner knows or should have known of the defect in construction. Under this view the time of the construction's completion and the time of the actual breach are irrelevant. *Boghossian v. Ferland Corp.*, 600 A.2d 288, 290 (R.I.1991); *Ehrenhaft v. Malcolm Price Inc.*, 483 A.2d 1192, 1203–4 (D.C.App.1984); *Georgetowne Ltd. Partnership v. Geotechnical Serv. Inc.*, 230 Neb. 22, 430 N.W.2d 34, 37 (1988); *Amodeo v. Ryan Homes*, 407 Pa.Super. 448, 595 A.2d 1232, 1235 (1991); *Filcek v. Utica Bldg. Co.*, 131 Mich.App. 396, 345 N.W.2d 707, 709 (1984) (discovery rule applies unless statute specifically prohibits it).[2]

We prefer the general rule that the limitations period begins to run when the

**2.** For a brief summary of these views, see 54 C.J.S. *Limitations of Actions* § 131.

contract is completed.[3] The other three views lend themselves to uncertainty. For example, a plaintiff may not be aware of when a particular subcontract is finished. *See, e.g., Witherspoon v. Sides Constr. Co.,* 219 Neb. 117, 362 N.W.2d 35 (1985). The limitations period might begin for one or more subcontracts several months or years before the construction is completed.

Similarly, under a discovery rule, a defendant is never completely certain that time has extinguished his liability. Whereas in tort this concern was remedied by Section 109, the Oklahoma architects' and builders' statute of repose, the law of contracts is not affected by this legislation. Were we to allow application of a discovery rule in contract cases, the legislatively-adopted public policy expressed by Section 109 of limiting a builder's liability after a certain time lapse would be defeated; a builder's liability for breach of contract could extend indefinitely. We reject extension of the discovery rule to suits for breach of contracts involving construction.

We believe *Wills v. Black & West* states the best rule: In a breach of contract action arising out of a construction contract, the statute of limitations begins at the completion of the construction contract. Although *Wills v. Black & West* involved an architect rather than a subcontractor, its result is the most practical and allows for the most certainty for both parties.

■ However, application of this rule does not resolve the issue at hand. Regardless of when the building was completed, Vick's original work was not under the supervision or direction of the general construction contract. The general contractor worked under an agreement separate and apart. We can find no facts supporting an

inference that Vick's original work was done as a subcontractor; even plaintiff's petition asserts that Vick contracted directly with the Foundation. Vick's original contract was separate and distinct from the general contract. We will not combine the two separate contracts for limitations purposes. Such a combination would judicially extend the limitations period for the Vick contract beyond that which is statutorily allowed.[4]

■ Plaintiff Foundation asserts that even if we do not hold that the accrual date for Vick's contract was the date of the building's completion, the action was timely because Vick did additional soil testing as late as February 1984. Vick asserts that this later work was for the general contractor and was completely unrelated to the original soil testing completed in July 1983. The Foundation claims that this later work *was* pursuant to the original contract. This issue is critical to the limitations question. If Vick last performed under his separate contract with plaintiff in July 1983, the contract aspect of the claim is time-barred; if it was February 1984, the suit was timely filed as to the contract theory.

■ This is a material factual dispute which precludes summary judgment. Summary judgment will be denied if reasonable men might reach different conclusions from the evidentiary materials presented. *Manora v. Watts Regulator Co.,* 784 P.2d 1056, 1058 (Okla.1989). This factual dispute was brought to the trial court's attention in the Foundation's motion to reconsider the summary judgment. A material fact remains in controversy as to when the defendant Vick last performed on his separate contract, and is one to be decided by a fact-finder.[5] *Id.* We thus reverse the trial

---

**3.** For the distinction between completion and acceptance, see *Greenwood v. Lyles & Buckner, Inc.,* 329 P.2d 1063 (Okla.1958).

**4.** This ruling falls in line with *American–First Title & Trust Co. v. Ewing,* 403 P.2d 488, 492 (Okla.1965) wherein this Court held that a materialman's lien attaches on the date the material is furnished and the labor is begun *if the work is not done pursuant to a general contract.* There a materialman urged that his lien attached at the commencement of the building project. We

disagreed. Because the materialmen provided his material and services pursuant to his contract with the owner rather than a general contract, his lien did not attach until his goods and his services were first provided. See 42 O.S. 1991 § 141.

**5.** If, perchance, the fact-finder should conclude that the original contract was fully performed by Vick in July '83, but that his additional work for the contractor in February '84 amounted to breach under the general contract, then Vick

court's grant of summary judgment as to the contract action and remand for further proceedings.

## III. THE TORT ACTION

### A. 12 O.S.1991 § 109 IS NOT A STATUTE OF LIMITATION

The Court of Appeals construed 12 O.S. 1991 § 109 to permit the plaintiff to bring the tort action against Vick any time prior to the expiration of the ten-year period referred to in the statute. Section 109 states that no tort action to recover damages for deficient design or construction can be brought later than ten years from date of substantial completion of an improvement to real estate. In *St. Paul Fire & Marine Ins. Co. v. Getty*, 782 P.2d 915, 918 (Okla.1989), we observed that Section 109 was written as statute of repose rather than a statute of limitation. The statute of repose acts as an "outer boundary in time beyond which no cause of action may arise for conduct that would otherwise have been actionable." *Id.* at 919.

■ Statutes of *limitation* place a limit on the time within which the plaintiff may bring an action after a cause of action arises. *Reynolds v. Porter*, 760 P.2d 816, 820 n. 9 (Okla.1988). After the statutory time period lapses, the remedy for the accrued cause of action is extinguished. *Id.* In contrast, statutes of *repose* fix an absolute outer boundary in time beyond which a suit may not be brought, and may bar a cause of action before it ever accrues. *Id.*

■ Section 109 is a statute of repose; it may bar a cause of action that has not yet accrued. *St. Paul*, 782 P.2d at 918. As such, the ten-year limit was incorrectly applied by the Court of Appeals to allow the Foundation to bring suit. Obviously the action was brought within ten years after completion and is not interdicted by Section 109. But we must look to 12 O.S. 1991 § 95 (3rd) to determine whether the tort action is barred by the applicable statute of limitations.

would be answerable, but only for the conse-

### B. THE DISCOVERY RULE IN SUITS FOR BUILDERS' NEGLIGENCE

Defendant Vick has conceded that limitations on the tort theory against him is subject to a discovery rule. He asserts, however, a time-bar, as the suit was brought in 1989, more than two years after discovery of the problem. In his statement of uncontroverted facts Defendant claimed that the problems became apparent in August 1984, and that the Plaintiff was aware of the defects for "several years" before bringing suit. The Plaintiff did not dispute this in the proceedings on summary judgment. But the Plaintiff claimed that the exact cause of the problems only became known in December, 1987 when an independent consultant reevaluated the soil, and reported that this in fact was the source of the problems.

■ A cause of action for an injury based on negligence must be brought within two years of the accrual of the cause of action. 12 O.S.1991 § 95 (3rd). The statute is, however, subject in certain instances to a "discovery rule." The discovery rule provides that the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury. *See, e.g. Reynolds v. Porter*, 760 P.2d 816 (Okla.1988); *Funnell v. Jones*, 737 P.2d 105 (1985).

Recently, we interpreted Section 95 (3rd) as allowing application of the discovery rule in a suit against an architect for negligence. In *MBA Commercial Constr. v. Roy J. Hannaford Co.*, 818 P.2d 469 (Okla.1991), a subcontractor brought suit, alleging, among other things, that the architect negligently designed the building. The architect asserted that the negligence action was barred by the two-year statute of limitation. We first noted that Section 95 is not a statute of repose, but one of limitation. *Id.* at 473. "The limitation period in § 95 begins to run from the time the elements of a cause of action arise." *Id.* Then we reasoned that the tort cause of action against the architect did not arise until the damage occurred and could have been discovered. *Id.* at 474.

quences of his February '84 activity.

In *McVay v. Rollings Constr.*, 820 P.2d 1331 (Okla.1991), we again applied the discovery rule in a case involving a negligence action for the failure of a plumber to reconnect a private sewer line. We specifically rejected the "rule of injury" in favor of the "rule of discovery." Id. at 1332–1333. Pointing out that Oklahoma courts have applied the discovery rule in a variety of situations, we held that the application of the discovery rule was in line with our prior cases and the policy behind statutes of limitation. *Id.* at 1333. *See also In re 1973 John Deere 4030 Tractor*, 816 P.2d 1126 (Okla.1991).

Other courts have applied the discovery rule to malpractice actions involving engineers and architects.[6] For example, in *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 387 (10th Cir.1979), the Tenth Circuit, relying on Colorado law, determined that the discovery rule should apply in malpractice claims involving engineers and architects. In so holding, the court ruled that:

> There is no difference, in our view, as far as the wronged plaintiff is concerned, whether the negligence of the defendants was *concealed* or for some *other* valid cause the plaintiff failed to learn of the negligence, unless, of course, the plaintiff, in the exercise of reasonable diligence, should have known of the negligence at the time of its occurrence. *Id. quoting Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603, 605 (1970) (Emphasis in original).

We agree with the Foundation's assertion that the discovery rule should apply to the tort-based theory of recovery. The application of the discovery rule is consistent with our prior case law and the trend of sister jurisdictions as applied to architect and engineer negligence actions. However, we must note that this rule is not to be applied to contravene the purposes and policies of Section 109. While the discovery rule may be applied to toll the stat-

ute of limitation in Section 95, the legislature has absolutely prohibited its use to extend the time period for bringing tort actions beyond the ten-year period established by Section 109. *See St. Paul Fire & Marine Ins.*, 782 P.2d at 920.

The question then becomes: When did the Foundation know (or when should it have known) of the defects which gave rise to this lawsuit? In his summary judgment motion Defendant alleges that the defects were known several years prior to the filing of the action. He asserts as uncontroverted the fact that the Foundation began experiencing problems in August of 1984. The Foundation does not controvert this fact (other than to say in its brief it was early 1985—a difference without meaning). Instead it asserts that the independent consultant did not complete its evaluation on the soil until December, 1987. The Foundation insists that this is the operative date, because before that report it was uncertain as to who was responsible for the defects. On appeal the Foundation urges that when it "discovered" the defects is a question of fact, making summary judgment improper.

The operative date is that date on which plaintiff could have brought suit. In *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 433 N.W.2d 478 (1988), the plaintiffs brought suit alleging negligent design and supervision on the part of the architects. Plaintiffs asserted that they did not have the requisite knowledge of defects until they knew the exact source and cause of the problems. Although cracks in the walls appeared as early as 1977, suit was not filed until 1984. The Nebraska Supreme Court held that "[d]iscovery, as applied to statutes of limitations, refers to the fact that one knows of the existence of an injury or damage and not that he or she has a legal right to seek redress in court." *Id.* 433 N.W.2d at 484. *It was not necessary that the plaintiff*

---

**6.** *Bonestell v. North Topsail Shores Condominiums*, 103 N.C.App. 219, 405 S.E.2d 222, 225 (1991); *Dryden v. Bell*, 158 Ariz. 164, 761 P.2d 1068, 1071 (Ariz.Ct.App.1988); *Dillon County School Dist. # 2 v. Lewis Sheet Metal Works*, 286 S.C. 207, 332 S.E.2d 555, 559 (S.C.Ct.App.1985);

*Filcek v. Utica Building Co.*, 131 Mich.App. 396, 345 N.W.2d 707, 708–9 (1984); *Kundahl v. Barnett*, 5 Wash.App. 227, 486 P.2d 1164, 1166–67 (1971); *Banner v. Town of Dayton*, 474 P.2d 300 (Wyo.1970); *Steelworkers Holding Co. v. Menefee*, 255 Md. 440, 258 A.2d 177 (1969).

*have knowledge of the exact nature or source of the defects, but only the knowledge that a problem existed. Id.*

■ In *Daugherty v. Farmers Cooperative Ass'n.,* 689 P.2d 947, 950–51 (Okla.1984), we explained what is required by the plaintiff under the discovery rule:

Properly limited, a discovery rule should encompass the precept that *acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations.* [Citations Omitted]. This rule obtains because a reasonably prudent person is required to pursue his claim with diligence.

Once a plaintiff has sufficient knowledge to know that an actionable defect exists, the limitations period begins to run. *Id. See also Georgetowne Ltd. Partnership,* 430 N.W.2d at 37; *Sisters of Mercy v. Gaudreau, Inc.,* 47 Md.App. 372, 423 A.2d 585 (1980).

■ While this question is generally one of fact, Defendant's assertion that the problems began in August 1984 was uncontroverted by the Foundation in the summary judgment proceedings. Rule 13 of the District Courts Rule states that those material facts set forth in a motion for summary judgment are deemed admitted unless specifically controverted by the opposing party. We note that in its brief on appeal, the Foundation admits that it noticed early in 1985 that the slab had moved, causing floor tiles to pop off and doors to stick. *Appellant's Brief in Chief,* at 3. Either the August 1984 date or the early 1985 date, however, compels the same conclusion, that the 1989 tort action is out of time.

■ Concededly, fraud or concealment by Vick could toll the limitations period. *See Wills,* 344 P.2d at 584. However, the Foundation has not alleged either of these nor argued them on appeal. Instead, the Foundation urges that because the exact source of the problem was unknown until the independent report was completed, the limitations period did not begin until then. We disagree. It is uncontroverted

that the defects in the building began to appear almost immediately. Even though there was some uncertainty as to the reasons for the problem, the observation of doors sticking and tiles popping off alerted the Foundation that a problem ·existed. The Foundation was well aware of the defects in 1984 or early 1985. We must agree that the plaintiff's attempt to recover based on negligence is barred by the statute of limitations. At least four years passed after the problems became apparent before the Foundation filed suit. That part of the Order of the District Court dismissing the cause as to professional negligence is affirmed.

## CONCLUSION

The Court of Appeals' opinion is vacated. The Order of the District Court sustaining Defendant's Motion for Summary Judgment on the tort theory of the claim is affirmed. Its Order sustaining Defendant's Motion for Summary Judgment on the contract theory is reversed. The case is remanded to the District Court of Carter County for further proceedings.

OPALA, C.J., HODGES, V.C.J., and HARGRAVE and WATT, JJ., concur.

LAVENDER, J., concurs in result in part II, concurs in part III.

ALMA WILSON and KAUGER, JJ., concur in part, dissent in part.

SIMMS, J., concurs in part III, dissents from part II.