JONES, Appellant,

v.

HUGHEY et al., Appellees.

[Cite as *Jones v. Hughey,* 153 Ohio App.3d 314, 2003-Ohio-3184.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1005.

Decided June 19, 2003.

Anthony Law Offices, L.L.C., and Michael J. Anthony, for appellant.

Robins, Preston, Beckett, Hammond & Sewards and Scott E. Williams, for appellees.

BROWN, Judge.

{¶ 1} This is an appeal by plaintiff-appellant, Richard L. Jones, from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Larry W. Hughey and Kathi M. Hughey.

{¶ 2} This action arose out of plaintiff's purchase of a house from defendants on September 20, 1994. On January 29, 2001, plaintiff filed a complaint against defendants, alleging causes of action for fraud, negligent construction, and negligence in the completion of a property disclosure form.

{¶ 3} On January 11, 2002, defendants filed a motion for summary judgment. By decision filed on May 13, 2002, the trial court granted summary judgment in favor of defendants, finding that plaintiff's causes of action were barred by the four-year statute of limitations under R.C. 2305.09. Regarding plaintiff's claim for negligent construction, the trial court alternatively concluded that summary

judgment was appropriate in favor of defendants on the basis that defendants did not owe a duty to construct the home in a workmanlike manner.

{¶ 4} In its decision, the trial court made the following factual findings. In 1987, defendants purchased vacant land in Orient, Ohio, with the intent to construct a home. Defendant Larry Hughey (individually "Hughey") did most of the construction himself to save on costs. He completed the house in June 1988, at which time defendants moved in. Defendants considered the residence their dream home and contemplated that they would live in the house for the rest of their lives.

{¶ 5} Defendants acknowledged that during the time they resided in the house, approximately six shingles blew off the house and water seeped into the basement. Hughey sealed the basement, and the water problem was corrected.

{¶ 6} After living in the house for several years, defendant Kathi Hughey began having problems with her father, who lived next door, and defendants eventually decided to sell the house in 1994. Defendants completed a residential property disclosure form, under which they indicated that there were no material or other problems with the house.

{¶ 7} On September 24, 1994, plaintiff entered into a contract to purchase the house from defendants, and plaintiff contends that he relied upon defendants' representations in the property disclosure form in making his decision. Prior to the purchase, Hughey informed plaintiff that he had built the home himself. Plaintiff and his family moved into the house on January 1, 1995.

{¶ 8} Part of the evidence on summary judgment included the deposition testimony of plaintiff. Plaintiff stated that he experienced the following problems with the house immediately upon moving in: (1) rainwater began leaking into the sunroom, the children's bedrooms, and the master bedroom, and rainwater also flowed down the second-story walls into the garage, and then down the basement steps; (2) plaintiff was constantly replacing shingles on the roof; (3) the well did not operate correctly, and plaintiff learned that defendants had installed the wrong type of pump; (4) the windows in one of the bedrooms rattled because they were not properly installed; (5) the living room bay window did not close properly because it had been improperly installed; (6) condensation was forming around the patio door and dining room windows; (7) the kitchen counters were not properly connected to the wall; (8) linoleum was peeling on the kitchen floor; (9) various wooden floorboards were uneven due to the subflooring not being properly installed; (10) drywall seams and finish work on certain drywall had not been properly completed (drywall was bulging and drywall tape was visible); (11) the soffits were not properly installed and were sagging; and (12) vinyl siding was not properly installed.

{¶ 9} During the spring of 1998, following a severe storm, a large portion of the roof blew off the house. Plaintiff hired Eddie Williamson to replace the damaged roof. By affidavit, Williamson averred that, in performing the repair work, he noticed a number of structural problems with the house, requiring him to build overhangs, remove the enclosed back porch, and re-shingle the roof. Williamson further noticed that the flooring under the second floor was rotting due to water leaking into the second floor as a result of an "offset" between a wall and the roof; he removed the wall, installed a new floor, and replaced the wall "four inches out" to remove the offset. Williamson also replaced the sheeting, window frames, and corner supports around the garage due to rotting.

{¶ 10} During the spring of 2000, plaintiff's wife informed Williamson that the floor around the toilet was wet. Upon investigation, Williamson discovered that the toilet was sinking because the floor joist had been cut out to accommodate the toilet drain.

{¶ 11} Plaintiff stated in an affidavit that he did not suspect the problems he was experiencing with the house were structural in nature until 1998. Plaintiff subsequently hired Janet Herron, an industrial engineer, to inspect the house. Herron conducted an inspection in July and August 2000 and noted numerous major and minor defects with the house. In an affidavit, Herron opined that plaintiff might not have initially been alerted to the fact that the house had major structural defects.

{¶ 12} The trial court, in granting summary judgment in favor of defendants, held that plaintiff was placed on notice that the home was negligently constructed shortly after moving into the residence in 1995, and, thus, the statute of limitations commenced on plaintiff's causes of action that year. The court also held that defendants were entitled to summary judgment on plaintiff's claim for negligent construction on the basis that defendants did not owe plaintiff a duty to construct the house in a workmanlike manner.

{¶ 13} On appeal, plaintiff asserts the following two assignments of error for review:

{¶ 14} I. "The trial court erred to the prejudice of the appellant when it granted appellees' motion for summary judgment by finding that reasonable minds could only conclude that the statute of limitations commenced in 1995 upon move-in."

{¶ 15} II. "The trial court erred to the prejudice of the appellant by granting appellees' motion for summary judgment by finding that appellee, as builder, owes no duty to construct the home in a workmanlike manner or at the very least a habitable manner."

{¶ 16} Under his first assignment of error, plaintiff asserts that the trial court erred in granting summary judgment in favor of defendants based upon the court's finding that the statute of limitations on plaintiff's causes of action commenced in 1995.

{¶ 17} In *Crystal v. Wilsman,* 151 Ohio App.3d 512, 2003-Ohio-427, 784 N.E.2d 764, at ¶ 12–13, the court set forth an appellate court's standard of review from a trial court's ruling on summary judgment as follows:

{¶ 18} "We consider an appeal from summary judgment under a de novo standard of review. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion, which is adverse to the nonmoving party.

{¶ 19} "The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment. If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will only be appropriate if the nonmovant fails to establish the existence of a genuine issue of material fact."

{¶ 20} The trial court noted in its decision that the parties did not dispute that the applicable statute of limitations controlling all three causes of action is four years, as set forth under R.C. 2305.09, which states in part:

{¶ 21} "An action for any of the following causes shall be brought within four years after the cause thereof accrued:

{¶ 22} "* * *

{¶ 23} "(C) For relief on the ground of fraud;

{¶ 24} "(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, 2305.14 and 1304.35 of the Revised Code. If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."

{¶ 25} The general rule is that a cause of action accrues at the time the wrongful act was committed. *Harris v. Liston* (1999), 86 Ohio St.3d 203, 205, 714 N.E.2d 377. However, "there are certain instances where the legislature and/or the Ohio Supreme Court have stated that a 'discovery rule' should apply for purposes of determining when the applicable limitations period begins to run." *Geraldo v. First Dominion Mut. Life Ins. Co.,* Lucas App. No. L–01–1210, 2002-

Ohio-4654, 2002 WL 31002770, at ¶ 30. The discovery rule is applied "in situations where the wrongful act does not immediately result in injury or damage," and therefore "strict application of the general rule can lead to an unjust result." *Liston,* supra, 86 Ohio St.3d at 205–206, 714 N.E.2d 377. The Ohio Supreme Court has extended the discovery rule to actions alleging damage to real property, and the effect of the rule is to delay the commencement of the statute of limitations until "it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property." Id. at 207, 714 N.E.2d 377.

{¶ 26} While plaintiff concedes that some of the defects were obvious at the time he moved into the house, he asserts that other defects, including problems with the roof, were latent and could not have been discovered until at least 1998, when work was performed on the roof after much of it was destroyed in a wind storm. Plaintiff also argues that the trial court erred in considering all of the claimed defects as a whole, rather than individually.

{¶ 27} The trial court, in addressing the statute of limitations issue, found that it was undisputed that plaintiff, upon immediately moving into the house, was aware of numerous material defects, including problems with the roof, well, pump, drywall, kitchen counters, windows, floors, vinyl siding, soffits, and water leaking into the house. The court found that plaintiff was placed on notice shortly after moving into the house that the house was negligently constructed and that plaintiff was either alerted to the fact or, with the exercise of reasonable diligence, should have discovered that the residential property disclosure form was fraudulently or negligently completed. Further, the many problems he encountered from "day one" gave rise to a duty to inquire further into the matter with due diligence. The court found that reasonable minds could only conclude that the statute of limitations commenced on plaintiff's causes of action in the year 1995 and that a reasonable person could not conclude that plaintiff did not discover the alleged wrongdoing or damages until the spring of 1998. Therefore, because the case was not filed until January 29, 2001, the court found it to be time-barred by the four-year statute of limitations.

{¶ 28} Upon review, we find no error with the trial court's application of the discovery rule to the facts of this case. Regarding plaintiff's claim that he was not aware of the serious nature of the problems with the house until 1998, Ohio courts have held that it is "unnecessary that the full extent of damages be ascertainable" in determining the accrual date of a cause of action for statute of limitations purposes. *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 689, 595 N.E.2d 360. Thus, "an accrual of a cause of action is not delayed until the full extent of the resulting damage is known." Id. Rather, "[n]o more than a reasonable opportunity to discover the fraud is required to start the

period of limitation." *Zeppernick v. PNC Bank Natl. Assn.* (2000), Mahoning App. No. 99 CA 7, 2000 WL 1262459.

{¶ 29} In *Bd. of Edn. v. Dela Motte–Larson* (1989), Cuyahoga App. No. 56275, 1989 WL 155155, the plaintiff initially discovered roof leakage in 1977, but did not hire an engineer until 1987, at which time it was determined that the water leakage was due to improper design of the structure. The court in *Dela Motte–Larson* held that the statute of limitations under R.C. 2305.09(D) began to run in 1977, when the roof initially leaked. Similarly, in *Aluminum Line Products Co. v. Brad Smith Roofing Co., Inc.* (1996), 109 Ohio App.3d 246, 257, 671 N.E.2d 1343, plaintiffs noticed that a roofing system installed by defendant in 1984 began to leak almost immediately after installation, the court concluded that plaintiffs were put on notice at that time to investigate the roof's installation.

{¶ 30} Other jurisdictions, under similar circumstances, have rejected the view that the discovery rule tolls the running of the statute of limitations where a plaintiff, although aware of a potential problem with a structure, does not have knowledge of the full extent of the damage. See *Mansfield v. GAF Corp.* (1977), 5 Mass.App.Ct. 551, 364 N.E.2d 1292 (plaintiff's cause of action accrued at the time he noticed leaks in roof, even though plaintiff's experts did not recognize extent of such leaks until much later); *Smith v. Ethell* (1986), 144 Ill.App.3d 171, 175, 98 Ill.Dec. 742, 494 N.E.2d 864, 867 (purchaser of tavern who observed water damage to ceiling was not justified in relying upon vendor's assertion that roof was in good condition for old building; the defect "was a visible one although the cause of the defect was unclear without further inspection," and plaintiffs should have investigated the cause of water damage); *Regas v. Associated Radiologists, Ltd.* (1992), 230 Ill.App.3d 959, 965, 172 Ill.Dec. 553, 595 N.E.2d 1223, 1228 (vendor not liable to purchaser for damages for defects to subroof despite plaintiff's claim that defect was latent and could not have been discovered by a reasonable investigation; court held that water leak in roof was visible and obvious and that plaintiff's testimony that he did not know the cause of the leak "does not erase his awareness of the problem").

{¶ 31} In *White v. Peabody Constr. Co.* (1982), 386 Mass. 121, 434 N.E.2d 1015, the plaintiffs/tenants brought an action against a general contractor and original owner of an apartment building for water damage from roof leaks allegedly caused by defendants' improper design and construction. In *White*, despite the plaintiffs' acknowledgement that the building constructed by defendants was plagued by leakage from its inception, plaintiffs argued that their cause of action did not accrue until later, when the cause and cure of the leaks was finally determined. The court in *White* rejected this contention, stating that plaintiffs' contention reflected a misunderstanding between statutes of limitations and the "delayed discovery" doctrine. The court explained that "[i]n all cases the statute

of limitations begins to run when the injured person has notice of the claim" and that "[t]he 'notice' required is not notice of every fact which must eventually be proved in support of the claim." Id. at 1020. Instead, " 'notice' is simply knowledge that an injury has occurred." Id. Thus, the court held that the plaintiffs' knowledge of leaks at the time they occupied the building was sufficient to put them on notice that they had been injured.

{¶ 32} In the present case, plaintiff acknowledged in his deposition testimony that he first noticed water problems with the roof at the time he moved into the residence in early 1995. Specifically, during that winter and spring, there were leaks in the house; plaintiff noticed "[w]ater dripping on the ceiling * * * some of it where we put a pot under it." Plaintiff noted that the leaks were mostly on the back portion of the house; there was some water coming in on the second floor, and plaintiff observed water coming from the second story down into the garage. We agree with the trial court's determination that plaintiff's knowledge of numerous leaks in the house during the spring of 1995 placed him on notice of a potential defect and was sufficient to have prompted him to further investigate the cause of the leak at that time so as to alert him to whether he had a cause of action against defendants. The fact that he did not appreciate the extent of the damage until later is not dispositive. *Mansfield,* supra, 5 Mass.App.Ct. at 555, 364 N.E.2d at 1295.

{¶ 33} Nor do we find that the trial court erred in holding that plaintiff was on notice. The numerous noticeable defects should have alerted him to the possibility that defendants may have committed fraud or acted negligently. See *Hanson Housing Auth. v. Dryvit Sys., Inc.* (1990), 29 Mass.App.Ct. 440, 447, 560 N.E.2d 1290 (circumstances known to owner by certain date, including defective caulking, bubbling in finish coat, two cracks, movability of portion of exterior wall, and leaks, "considered together," were such as to alert owner to possible existence of cause of action against contractor).

{¶ 34} Accordingly, we find that the trial court did not err in granting summary judgment in favor of defendants on plaintiff's causes of action, and plaintiff's first assignment of error is overruled.

{¶ 35} As noted under the facts, the trial court, in addressing plaintiff's claim for negligent construction, also found that defendants were entitled to summary judgment on that claim on the basis that defendants did not owe a duty to construct the home in a workmanlike manner. An action for negligent construction is a tort sounding in negligence and is controlled by the four-year statute of limitations contained in R.C. 2305.09. *Aluminum Line Products,* supra, 109 Ohio App.3d at 254, 671 N.E.2d 1343. Our determination that plaintiff's claims are barred by the statute of limitations renders moot the issue whether the trial court

322

erred in granting summary judgment on the negligent construction claim on the alternative ground that defendants owed no duty.

{¶ 36} Based upon the foregoing, plaintiff's first assignment of error is overruled, plaintiff's second assignment of error is rendered moot, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

TYACK and KLATT, JJ., concur.