**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

CURTIS DELASHAW;
JENNICE DELASHAW, husband
and wife, d/b/a Delashaw Farm,

Plaintiffs-Appellants,

v.

TYSON FOODS, INC.; THE PORK
GROUP, INC.,

Defendants-Appellees,

and

DANIEL YOUNT, d/b/a Daniel Yount
Construction,

Defendant.

No. 02-7145
(D.C. No. 02-CV-121-S)
(E.D. Okla.)

---

ORDER AND JUDGMENT *

---

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiffs Curtis and Jennice Delashaw filed a petition in Oklahoma state court in February 2002, asserting a number of contract and tort claims against defendants-appellees Tyson Foods, Inc. and the Pork Group, Inc. (collectively the "Tyson Defendants"). Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the Tyson Defendants removed the case to federal court. The only claim at issue in this appeal is plaintiffs' claim that the Tyson Defendants were negligent in designing and overseeing the construction of swine barns on plaintiffs' property.[1] The district court granted summary judgment in favor of the Tyson Defendants on plaintiffs' negligence claim, concluding that the claim was barred by the two-year statute of limitations in Okla. Stat. tit. 12, § 95(3). Our jurisdiction arises under

---

[1] The district court entered summary judgment in favor of the Tyson Defendants on each of plaintiffs' other claims, and plaintiffs are not challenging the entry of summary judgment on their other claims. In addition, plaintiffs are not appealing the dismissal of the claims they asserted against defendant Daniel Yount. With respect to defendant Yount and the appellate jurisdictional issue referred to in the order entered by this court on December 27, 2002, we have determined that plaintiffs' claims against defendant Yount were fully adjudicated in the orders entered by the district court on November 13, 2002 and December 18, 2002. We are therefore satisfied that the district court fully adjudicated all of plaintiffs' claims and that its orders were final and subject to appeal.

28 U.S.C. § 1291, and we reverse the entry of summary judgment against plaintiffs on their negligence claim and remand this matter to the district court for further proceedings.

I.

The district court summarized the factual background pertaining to the parties' dispute as follows:

>  Sometime in 1993, Tyson and Plaintiffs had discussions regarding the possibility of Plaintiffs producing swine for Tyson under a contractual arrangement. In order for this contract with Tyson to come to fruition, Plaintiffs necessarily had to possess swine production barns. Tyson required that these swine barns be built according to its plans and specifications. On July 8, 1993, Tyson and Curtis Delashaw entered into a written contract wherein Tyson was obligated to provide certain supplies and materials for the construction of the swine barns in exchange for Curtis Delashaw's promise to repay Tyson for such supplies and materials. Additionally, on November 16, 1993, Curtis Delashaw entered into a separate construction contract with Defendant Daniel Yount . . . for the construction of the swine barns. Yount completed construction of the swine barns in June 1994. Plaintiffs began producing swine for Tyson pursuant to a four-year swine production contract entered into in April 1994.

>  Plaintiffs began experiencing problems with the swine barns almost immediately after construction was completed in June 1994. The record establishes Plaintiffs discovered the following problems in 1994: conduit lines not properly buried with some lines above the ground, light switches causing shocks, wiring deficiencies in the lactation area causing short outs, sows' heads being stuck between feeding troughs and feeding tubes, improper functioning of automatic curtain machines, substandard construction of loading ramps and walkway rails, improper installation of water spouts, cracking of concrete floors, and faulty welding and fabrication of breeding pens. Other problems with the swine barns surfaced thereafter including

-3-

faulty stainless steel feed troughs in the Spring of 1995, the replacement of feeder tubes in 1996 and 1998, the replacement of the computer that runs the exhaust and curtain machines in 1998, and the malfunctioning of the irrigation system in 1997. The construction problems were so pervasive with the swine barns that Curtis Delashaw testified [at his deposition that] he was expressing complaints to Tyson in July and August 1994 that "everything was shoddy done and incomplete and put up wrong." (Deposition of Curtis Delashaw, p. 112, lines 5-7).

On February 12, 2002, Plaintiffs filed their petition against the Tyson Defendants . . . seeking monetary damages for the repair or replacement of the swine barns, the loss of swine production, and other business related losses. On March 12, 2002, the Tyson Defendants . . . filed their notice of removal.

Deferred and Stipulated App. (App.) at 311-12 (footnote omitted).

The Tyson Defendants moved for summary judgment on all of the claims asserted in plaintiffs' petition, arguing that the claims were barred by the applicable statutes of limitation. In response to the motion, plaintiffs argued that they were asserting tort claims related to two specific problems with the swine barns, an allegedly defective ventilation system and allegedly defective slats,[2] and plaintiffs argued that those claims did not accrue under Oklahoma's "discovery rule" until after February 2000.[3] As a result, plaintiffs argued that their tort

---

[2]     According to plaintiffs, "[s]lats are expensive flooring on which hogs stand, built from perforated concrete slabs specially designed, constructed and reinforced to span the waste pit in this type of facility." Aplts. Br. at 2 n.1.

[3]     As noted above, plaintiffs filed their state-court petition in February 2002.

-4-

claims related to the ventilation system and slats were not barred by the two-year

limitations period in Okla. Stat. tit. 12, § 95(3).

The district court rejected plaintiffs' argument. While the court agreed

with plaintiffs that the two-year limitations period in Okla. Stat. tit. 12,

§ 95(3) was subject to Oklahoma's discovery rule, the court nonetheless

concluded that "[a]pplication of the discovery rule to the facts herein results in a

finding that Plaintiffs' tort claims are barred by the two-year limitation period."

App. at 318. The court explained its reasoning as follows:

> As asserted in their complaint, the essence of Plaintiffs' claims
> . . . involves the allegation that the Tyson Defendants' "design and
> construction of [the swine barns] and equipment were inadequate,
> negligent and not of workmanlike quality" thereby resulting in
> numerous deficiencies in the finished product. The undisputed
> evidence establishes that the majority of these alleged deficiencies
> were known by Plaintiffs as early as 1994. . . .
>
> In an attempt to counter this admitted knowledge of
> deficiencies with the swine barns in 1994, Plaintiffs isolate two
> problems as the heart of their lawsuit - the slats and ventilation
> system - which Plaintiffs contend were not known until within two
> years of the filing of this action. Plaintiffs argue their recent
> knowledge of the existence of problems with the slats and the
> ventilation system creates . . . a question of fact with respect to the
> application of the discovery rule. The court disagrees. In [*Samuel
> Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619 (Okla. 1992)], the
> Oklahoma Supreme Court rejected a similar argument. The plaintiff
> in *Vick* brought suit against Vick, a soil engineer hired by plaintiff to
> perform soil tests for the construction of a new building. *Id.* at 621.
> The building was completed in 1984 and it immediately began to
> show signs of an infirm foundation, including tiles popping up and
> doors sticking. *Id.* In 1987, Plaintiff received an opinion from an
> independent consultant which identified the source of the problems.

*Id.* Plaintiff filed its suit against Vick within two years of the receipt of the 1987 report. *Id.* The Oklahoma Supreme Court held that Plaintiff's tort claim against Vick was barred by application of the discovery rule. *Id.* at 626. The Court determined Plaintiff had sufficient knowledge of the existence of a problem with the foundation by at least 1985 when it admittedly noticed the slab had moved. *Id.* at 626. The fact plaintiff did not know of the exact nature or source of the problem until the 1987 consultant opinion did not prevent the application of the discovery rule from barring its claim against Vick. *Id.*

A similar application of the discovery rule bars Plaintiffs' tort claims in the instant case. The undisputed evidence is that Plaintiffs knew of the multitude of problems with the design and construction of the swine barns as early as 1994. . . . The fact Plaintiffs claim they did not know of specific deficiencies in the slats and ventilation system until recently does not negate their knowledge of the many problems associated with the design and construction of the swine barns in 1994. The court rejects Plaintiffs' premise that proper application of the discovery rule requires knowledge of the exact nature or source of the defect.

App. at 318-20.

In this appeal, plaintiffs are appealing only the dismissal of their negligence claim. In addition, plaintiffs are seeking to impose liability on the Tyson Defendants only for the allegedly defective ventilation system and slats. We also note that, for purposes of this appeal only, the Tyson Defendants have conceded that they "owed a duty to Plaintiffs to ensure that the barns were well designed and properly constructed," and that they "breached [their] duty to Plaintiffs, and that said breach proximately caused the multitude of barn defects that Plaintiffs listed in their Petition." Aplees. Br. at 7-8.

II.

Under Oklahoma law, "[a] cause of action for an injury based on negligence must be brought within two years of the accrual of the cause of action." *Samuel Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619, 624 (Okla. 1992) (citing Okla. Stat. tit. 12, § 95(3)). "The statute is, however, subject in certain instances to a 'discovery rule.' The discovery rule provides that the limitations period does not begin to run until the date the plaintiff knew or should have known of the injury." *Id.*

The Oklahoma Supreme Court has recognized that Oklahoma's discovery rule has significant limitations. Most importantly, to trigger the running of the statute of limitations under the discovery rule, "*[i]t [is] not necessary that the plaintiff have knowledge of the exact nature or source of the defects, but only the knowledge that a problem existed.*" *Id.* at 625-26 (emphasis in original). According to the Oklahoma Supreme Court, a plaintiff may also be deemed to have constructive knowledge of certain facts.

> Properly limited, [the] discovery rule should encompass the precept that acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations. This rule obtains because a reasonably prudent person is required to pursue his claim with diligence.

*Daugherty v. Farmers Coop. Ass'n,* 689 P.2d 947, 950-51 (Okla. 1984) (citation omitted). Thus, while a plaintiff need not have knowledge of the exact nature or

-7-

source of a defect, "[a] plaintiff is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence." *Id.* at 951.

Under Oklahoma law, "[t]he party asserting the limitations defense has the burden to present evidence reasonably tending to establish the time-bar." *MBA Commercial Constr., Inc. v. Roy J. Hannaford Co.*, 818 P.2d 469, 472 (Okla. 1991). Further, "[w]hether an action is barred by the applicable statutory time limitation is a question of fact to be determined upon the evidence in each case." *Id.* Nonetheless, the Oklahoma Supreme Court has recognized that "summary judgment on a statute of limitations defense in favor of the asserting party is appropriate where the evidence is sufficient to support a finding of fact of the time-bar and where the evidence establishes there is no dispute as to the time the limitation period began to run." *Id.* at 472-73. This is consistent with the standard for granting summary judgment under Fed. R. Civ. P. 56(c), which provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326

(10th Cir. 1999). Having conducted the required de novo review, we conclude that the district court committed reversible error in granting summary judgment in favor of the Tyson Defendants on plaintiffs' negligence claim.

As a starting point, it is clear from the Oklahoma cases that the purpose of Oklahoma's discovery rule is to postpone the accrual of a tort claim until the plaintiff has actual or constructive knowledge of sufficient facts to prosecute the claim. Consequently, the two-year limitations period will not begin to run with respect to "hidden defects" until the defects are discovered or should have been discovered by the plaintiff. *See Lee v. Phillips & Lomax Agency, Inc.*, 11 P.3d 632, 635 (Okla. 2000) (holding, in case involving claim for negligent roof repairs, that "[w]here the negligent repair causes damages or a hazard which is hidden, the two-year statute of limitations does not begin to run until the property owner learned or, in the exercise of reasonable care and diligence should have learned of the harm through discovery of the hazardous condition caused by the hidden defect") (quotation and brackets omitted).

The district court determined that "the record supports a finding that Plaintiffs first became aware of the specific problems related to the slats and ventilation in either 2000 or 2001." App. at 315. We do not need to address the issue of when plaintiffs first became aware of the problems with the slats and ventilation system, however, because the Tyson Defendants are not arguing that

plaintiffs had actual knowledge of the alleged defects with the slats and ventilation system more than two years before they filed suit. Instead, the Tyson Defendants are relying exclusively on the district court's constructive knowledge analysis, which posits that plaintiffs had constructive knowledge of the alleged defects relating to the slats and ventilation system in 1994 when they were "first alerted to the many problems with the design and construction of the swine barns." *Id.* at 321.

We conclude that there is insufficient evidence in the record to support the district court's constructive knowledge determination. To begin with, the mere fact that plaintiffs were aware of a number of other significant problems with the swine barns as early as 1994, without more, does not end the constructive knowledge inquiry. Rather, it is simply the starting point. *See Anderson v. Brouwer*, 160 Cal. Rptr. 65, 68 (Cal. Ct. App. 1979) (holding, in case involving alleged construction defects in office building, that "[w]hether the statute of limitations ran on defects appearing subsequent to April 1971 depends upon whether a reasonable inspection and investigation when the first defects appeared would have led to the discovery of the later appearing defects," and that "whether an inspection and further inquiry after discovery of the initial defects would have shown the extent of the deficiencies that subsequently appeared is normally a question of fact"); *Mills v. Forestex Co.*, 134 Cal. Rptr. 2d 273, 294 n.15

(Cal. Ct. App. 2003) (noting, in case involving alleged construction defects in residential homes, that "[a] progressively developing or continuing wrong may give rise to a new cause of action, and start a new limitations period running, with each successive manifestation of a latent defect," and that "[t]he test is whether a reasonable inspection and further inquiry after discovery of the initial defect would have disclosed the full extent of the problem") (quotations omitted).

The district court also misapplied the Oklahoma Supreme Court's decision in *Vick*. In *Vick*, the court held that a building owner's negligence claim against a soil engineer accrued when the owner first became aware of indications ( *i.e.*, "[t]iles popped up and doors began to stick") that the building had problems with its foundation even though the owner did not learn of the exact cause of the problems until several years later. 840 P.2d at 621, 624-26. As the court explained, "[e]ven though there was some uncertainty as to the reasons for the problem, the observation of doors sticking and tiles popping off alerted [plaintiff] that a problem existed." *Id.* at 626.

The holding in *Vick* does not control the discovery rule issue in this case, however, because it was undisputed that the plaintiff in *Vick* was "[a]lmost immediately" aware of specific problems that would have put a reasonable person on notice that the building may have a defective foundation. *Id.* at 621. As a result, the *Vick* court's reasoning was based on the premise that a reasonable

investigation of the known problems at the time they were initially discovered would have led to a discovery of the defective foundation. [4] By contrast, plaintiffs here claim that the problems with the slats and ventilation system are separate and distinct from the other design and construction problems that they were aware of between 1994 and 1998, and the Tyson Defendants have failed to make an evidentiary showing to rebut plaintiffs' claim. Further, the Tyson Defendants have made no evidentiary showing that the problems with the slats and ventilation system would have been discovered if a reasonable investigation of the other known problems had been conducted.

In sum, we conclude that there are genuine issues of material fact concerning: (1) whether the problems with the slats and ventilation system were related to the other design and construction defects that plaintiffs were aware of between 1994 and 1998; and (2) whether a reasonable investigation of the other

---

[4] In addition to *Vick*, the Tyson Defendants are also relying on the decision of the Ohio Court of Appeals in *Jones v. Hughey*, 794 N.E.2d 79 (Ohio Ct. App. 2003). However, like *Vick*, *Jones* is distinguishable. In *Jones*, the court held that the plaintiff was on notice of a potential defect with respect to the roof of a house he had purchased at the time he initially moved into the house and became aware of numerous water leaks. 794 N.E.2d at 85. As a result, the court rejected the plaintiff's claim that he did not have sufficient knowledge regarding the defect to trigger the running of the statute of limitations until several years later when work was performed on the roof. *Id.* at 83, 85. The situation in *Jones* was therefore very different from the situation in this case, as it was undisputed that the plaintiff in *Jones* was aware of specific problems related to the roof that would have put a reasonable person on notice that the roof may be defective.

known defects would have led to a discovery of the problems with the slats and ventilation system.

The judgment of the district court is REVERSED as to plaintiffs' negligence claim, and this matter is REMANDED to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge