LAIPPLY et al., Appellees,

v.

BATES et al., Appellants.

[Cite as *Laipply v. Bates,* 166 Ohio App.3d 132, 2006-Ohio-1766.]

Court of Appeals of Ohio,
Seventh District, Noble County.

No. 05 NO 326.

Decided March 31, 2006.

Joey and Stacey Laipply, pro se.

Byron Bates, pro se.

John Estadt, for appellant Dennis Thompson.

---

VUKOVICH, Judge.

{¶ 1} Defendants-appellants, Byron Bates and Dennis Thompson, appeal the small-claims judgment that the Noble County Court entered against them and in favor of plaintiffs-appellees, Joey and Stacey Laipply. Two issues are raised in this appeal. The first issue is whether the statute of limitations barred the Laipplys' claim. The second issue is whether the court erred when it failed to find that the gas line at issue was on Thompson's property and that the Laipplys did not have an implied easement for the gas line. For the reasons stated below, the judgment of the trial court is affirmed.

## STATEMENT OF FACTS AND CASE

{¶ 2} The Laipplys filed their small-claims complaint on November 19, 2004. The complaint alleged that in January 2004, the Laipplys were informed of a leak in a natural gas line that serviced their home. The actual location of the leak was in the gas line buried under the property of their neighbor, Thompson. The complaint alleged that at some unspecified prior time, Thompson and Bates had damaged and then repaired the gas line in the same spot where the leak occurred in 2004. The Laipplys prayed for $2,234 in damages to cover their gas bill from Columbia Gas Company, plus reimbursement for repair charges, lost wages, and an equipment charge.

{¶ 3} A hearing was held on January 19, 2005, and was continued to February 2, 2005. The parties appeared pro se at the hearing. The evidence at the hearing established that the original damage to the gas line occurred six years prior to the date that the Laipplys filed their complaint. Thompson had hired Bates to perform some backhoe work on his property, and Bates had damaged the gas line with the backhoe. Thompson had turned off the gas, cut the damaged line, and repaired the damage himself without contacting Columbia Gas Company or the Laipplys. The line had been reburied before the Laipplys were

told of the damage. Thompson did explain the situation to the Laipplys soon after the repair was made. The Laipplys accepted the explanation, made no further inquires, and did not contact the gas company about the situation.

{¶ 4} In January 2004, the repair that Thompson had made came apart and began leaking natural gas into the ground and into a sewer drain. Columbia Gas Company billed the Laipplys for the gas that had leaked out. The Laipplys' gas bill for February 2004 came to $2,234, whereas their average monthly gas bill prior to that time was approximately $167.

{¶ 5} It was established that the Thompson property and the Laipply property had been part of the same parcel of land at the time the gas line was installed. The actual damage to the gas line occurred on Thompson's property, although the line serviced the Laipplys' home on their adjacent property. The trial court refused to consider issues dealing with title to the property or the existence of a valid right of way for the utility gas line, stating that these were matters for the Court of Common Pleas to decide, if the parties wished these issues to be resolved.

{¶ 6} When the hearing was reconvened on February 2, 2005, the Laipplys presented testimony from Jason Forshey, the plumber who had repaired the gas line in 2004. He testified that the earlier repair in 1999 did not meet plumbing-code standards or the standards used by Columbia Gas Company and that the wrong type of couplers had been used.

{¶ 7} On February 3, 2005, the county court filed its judgment entry. The court found that Thompson and Bates had damaged the gas line and had voluntarily repaired the line. The court found that the repair had not been done in a workmanlike manner. The court held that the statute of limitations for negligent construction applied to this case and that the statute did not begin to run until the Laipplys discovered the gas leak in 2004. The court awarded the Laipplys $2,317.04 in damages, plus interest.

{¶ 8} This timely appeal followed. Thompson and Bates raise two assignments of error. The Laipplys have not filed a brief.

*FIRST ASSIGNMENT OF ERROR*

{¶ 9} "The lower court erred in awarding damages to the plaintiffs as plaintiffs' claims are barred by the statute of limitations."

{¶ 10} The trial judge stated that this was a case of negligent construction. Thus, the trial court applied the "catch-all" statute of limitation found in R.C. 2305.09(D):

{¶ 11} "An action for any of the following causes shall be brought within four years after the cause thereof accrued:

{¶ 12} " * * *

{¶ 13} "(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code."

{¶ 14} Typically, a cause of action for negligence accrues at the time the wrongful act was committed. *Harris v. Liston* (1999), 86 Ohio St.3d 203, 205, 714 N.E.2d 377. However, the discovery rule provides an exception to this general rule.

{¶ 15} The discovery rule provides that an applicable cause of action accrues "at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 179, 546 N.E.2d 206.

{¶ 16} The four-year statute of limitations and the discovery rule are applicable in this case. In *NCR Corp. v. U.S. Mineral Prods. Co.* (1995), 72 Ohio St.3d 269, 649 N.E.2d 175, the Ohio Supreme Court stated:

{¶ 17} "[T]he discovery rule is appropriate for the accrual of such a cause of action. * * * While this court has applied the discovery rule most often in medical malpractice cases, * * * the underlying rationale also fits with latent property-damage actions. The discovery rule is invoked in situations where the injury complained of may not manifest itself immediately and therefore, fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations. * * * The discovery rule has not previously been applied to property-damage cases decided by this court. However, other jurisdictions have found the discovery rule useful and appropriate in resolving the limitations-of-actions issues in asbestos-removal-litigation cases. * * * These courts concluded that statutes of limitations should not bar claimants before they have a reasonable basis for believing they have a claim. The rationale for applying a discovery rule supports its application here." Id. at 271, 649 N.E.2d 175.

{¶ 18} Furthermore, four years later, in *Harris,* 86 Ohio St.3d at 207, 714 N.E.2d 377, the Ohio Supreme Court held:

{¶ 19} "[A] negligence action against a developer-vendor of real property for damage to the property accrues and the four-year statute of limitations of R.C. 2305.09(D) commences to run when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property."

{¶ 20} The major issue raised in this appeal is whether the four-year statute of limitations in R.C. 2305.09(D) started to run in 1999 or in 2004. Thompson and

Bates claim that it began to run in 1999 because the Laipplys were fully aware of the damage and nature of the repair done at that time. This argument can be divided into two parts.

{¶ 21} The first part of the argument is that the rule described in *Harris* is applied only in negligent-construction cases in which the defendant is a building contractor or developer who has built or sold a home with latent defects. Thompson and Bates claim that cases involving a failure to perform in a workmanlike manner refer only to construction professionals. They assert that the matter at hand does not involve the building or sale of a home and that they should not be treated as having a professional relationship with the Laipplys. They contend that this is a simple negligence case and that in simple negligence cases there is no discovery rule that tolls the running of the statute of limitations. See, e.g., *Investors REIT One,* 46 Ohio St.3d at 181, 546 N.E.2d 206.

{¶ 22} We find no merit in this argument. As is explained adequately above, the discovery rule is applicable to this case. The *Harris* holding does not apply only to a party performing work as a professional builder, contractor, or developer. The Ohio Supreme Court's use of more general terms in *NCR Corp.,* 72 Ohio St.3d 269, 649 N.E.2d 175, indicates as such. The court reasoned that the underlying rationale of the discovery rule "fits with latent property damage" cases. Id. at 271, 649 N.E.2d 175.

{¶ 23} Thus, the discovery rule is applicable in this case. Therefore, our attention turns to its application in the present situation.

{¶ 24} Thompson and Bates argue that if the discovery rule is applicable, then it stopped tolling in 1999. They argue that the Laipplys sat on their rights by failing to file their complaint within four years after they knew all the relevant details of the damage to the gas line and of the repair. Since the Laipplys' complaint was filed in 2005, Thompson and Bates conclude that the compliant should have been barred by the statute of limitations. Their argument is based upon the theory that the injury was reasonably discoverable when they informed the Laipplys about the gas line break and repair.

{¶ 25} The trial court disagreed and found that the discovery rule tolled the statute of limitations until 2004, when the leak occurred. Thus, it concluded that the injury was not *reasonably* discoverable at the time the Laipplys were informed of the break and repair.

{¶ 26} Given the facts in this case, we cannot disagree with the trial court's determination. The facts in this case can support the determination that the injury was not reasonably discoverable at the time the inappropriate couplers were put on the gas line.

{¶ 27} In likening this case to a medical-malpractice case (in which the discovery rule has been addressed numerous times), we can see that the key to the discovery rule is the word "reasonable." As explained in medical-malpractice cases:

{¶ 28} "[T]he statute of limitations begins to run when there is a 'cognizable event' whereby a reasonable patient is alerted or should have been alerted that an improper medical procedure, treatment or diagnosis has taken place." *Shade v. Bleser*, 2d Dist. No. 20938, 2005-Ohio-6544, 2005 WL 3358870, citing *Akers v. Alonzo* (1992), 65 Ohio St.3d 422, 425, 605 N.E.2d 1, citing *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 134, 538 N.E.2d 93.

{¶ 29} The key is when a *reasonable* person is alerted. The question of what is reasonable is a factual determination. Thus, it is the job of the trier of facts to determine what is reasonable. *Crawford v. Wolfe*, 4th Dist. No. 01CA2811, 2002-Ohio-6163, 2002 WL 31521593, ¶ 21–22. A reviewing court should not substitute its opinion as to what is reasonable in place of that of the trier of facts. The trier of facts is in the best position, by listening to the evidence and viewing witnesses, to determine what is reasonable in any given factual situation.

{¶ 30} In the instant matter, the trial court concluded that a reasonable person would not have been alerted. Thompson and Bates admitted that the repair had already been done and had been buried before they told the Laipplys about the damage. Thus, in the trial court's opinion, a reasonable person would not go and unbury the repaired gas line. It explained:

{¶ 31} "Had the defendants, when they damaged the line, shown the Plaintiff the manner in which it was repaired prior to the burying of the line, there would be no cause of action due. However, given the fact that they buried the line without giving the Plaintiffs the opportunity to inspect the manner in which the damaged pipe had been repaired, the court finds that the cause of action does not accrue until such time as the act was discovered, that being December 2004."

{¶ 32} While it is true that the Laipplys were informed by Thompson and Bates about the damage and repair, the record indicates only that. Nothing remotely suggests that Thompson and Bates had informed the Laipplys about what kind of couplers were used to fix the repair or exactly how they repaired the line. Thus, it cannot be concluded that their knowledge of the damage and repair should have reasonably led them to the discovery of the inappropriate couplers.

{¶ 33} This is especially the case given two specific facts. First, the repair was buried and, therefore, the Laipplys were unable to see the incorrect repair. Second, Mr. Laipply specifically testified that he was aware of how to properly repair a gas line. Had Thompson and Bates informed him of the couplers they

had used to make the repair, then Mr. Laipply would have known that the repair was faulty and could have taken action. Without more in the record to indicate what information the Laipplys were given, we should not second-guess the trial court's decision. The trial court, as the trier of fact, was in the best position to determine credibility and to determine whether the Laipplys had been adequately informed of the damage and repair. .

{¶ 34} Accordingly, given this fact situation, the Laipplys acted as any reasonable people would. Thompson and Bates damaged the line, repaired it, buried the repair, and then told the Laipplys of the damage. It was up to the trier of fact, in this case the county court, to determine whether the injury was reasonably discoverable. As stated above, generally the trier of fact determines how a reasonable person would act in the situation presented. That decision is not easily reversible. It is not the place of this court to substitute its opinion for that of the trial court. *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 22 OBR 199, 489 N.E.2d 277 (stating that an appellate court may not substitute its own judgment for that of the finder of fact when dealing with credibility). Thus, we will not disturb the trial court's determination that the injury was not *reasonably* discoverable at the time the Laipplys were told of the damage and repair to the gas line. This assignment of error lacks merit.

## SECOND ASSIGNMENT OF ERROR

{¶ 35} "The lower [court] erred by failing to find that the gas line at issue is the property of the defendant-appellant, the appellee had no implied easement for the gas line and thus appellant has no duty to the appellee."

{¶ 36} Thompson and Bates contend that they could not be liable for negligence because they owed no duty of care to the Laipplys. They arrive at this conclusion based on their assumption that the Laipplys did not possess an easement for the gas line.

{¶ 37} Thompson and Bates did not file any counterclaim in this action to determine who had proper title to the gas line. Neither did they file any counterclaim for trespass. Moreover, it is clear from the record that Thompson gave full permission to the Laipplys to enter his property, inspect the gas line, and repair it after the line broke in 2004.

{¶ 38} Regardless, even if Thompson and Bates had filed such counterclaims, the Noble County Court did not have jurisdiction to quiet title to the gas line right of way. The subject-matter jurisdiction of county courts is set forth in R.C. 1901.01 et seq. The jurisdiction of a county court over matters involving title to real property is very limited and does not include quiet-title actions. See R.C. 1907.05.

{¶ 39} The county court correctly determined that it did not have jurisdiction over this issue. This assignment of error lacks merit.

{¶ 40} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

DeGenaro, J., concurs.

Waite, J., dissents.

Waite, Judge, dissenting.

{¶ 41} I must respectfully dissent from the ultimate conclusion that the majority has reached in this case. I have no disagreements with the legal principles or case law that is cited in the majority opinion, since it is precisely the same authority that my own research has uncovered. I am perplexed at the outcome, though. Since no appellee's brief was filed in this case, we would normally accept appellants' statement of the facts and sustain appellants' assignment of error if it appears reasonable to do so, as we are directed to do in App.R. 18(C). Appellants have presented a very reasonable argument, supported by the evidence, that they damaged the gas line, repaired it, and then explained to appellees what had happened. Any information about the damage or repair work was either given to appellees or could easily have been obtained from appellants at the time the repair was done. I agree that the discovery rule must be considered in this case, but given the facts of this case, the discovery rule does not and cannot apply to toll the statute of limitations. There was nothing left for appellees to discover about the incident that was not available to them at the time that the pipeline was repaired.

{¶ 42} The fact that appellants reburied the pipeline before appellees could examine the damage or repair does not affect the outcome of this case, in my opinion. Under the discovery rule, the statute of limitations begins to run "at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 179, 546 N.E.2d 206. The injury here, or at least part of the injury, is that inappropriate couplers were used to make the repair to the pipeline. Although the majority claims that appellees acted reasonably, appellants' most basic argument is that whether or not appellees acted in a reasonable manner is not at issue here. The discovery rule triggers the statute of limitations not only when you reasonably could have discovered the injury, but also when you actually do discovery the injury. Appellees were aware of the actual injury at the time it happened, and, therefore, they discovered the injury in 1999.

{¶ 43} The discovery rule triggers the statute of limitations even if the full extent of the injury is not yet known, as long as there is some indication that an actionable injury has occurred. As stated by the Tenth District Court of Appeals:

{¶ 44} "Upon review, we find no error with the trial court's application of the discovery rule to the facts of this case. Regarding plaintiff's claim that he was not aware of the serious nature of the problems with the house until 1998, Ohio courts have held that it is 'unnecessary that the full extent of damages be ascertainable' in determining the accrual date of a cause of action for statute of limitations purposes. *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 689, 595 N.E.2d 360. Thus, 'an accrual of a cause of action is not delayed until the full extent of the resulting damage is known.' Id. Rather, '[n]o more than a reasonable opportunity to discover the fraud is required to start the period of limitation.' *Zeppernick v. PNC Bank Natl. Assn.* (2000), Mahoning App. No. 99 CA 7, 2000 WL 1262459." *Jones v. Hughey* 153 Ohio App.3d 314, 2003-Ohio-3184, 794 N.E.2d 79, ¶ 28.

{¶ 45} Furthermore, even if we were permitted to sua sponte consider (with no brief from appellees to guide us) the "reasonableness" of the circumstances, there is an additional factor that the trial court failed to consider. If a negligence case involves a voluntary undertaking of a duty, as occurred here, then the plaintiff must show that he or she reasonably relied on the service rendered by the volunteer. *Douglass v. Salem Community Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, ¶ 74. There is no indication in the record that would support appellees' reasonable reliance on the repair work done by Thompson, particularly in light of the fact that appellees knew that no one from Columbia Gas Company or any other professional service had been informed about the damaged pipeline or the repair done by Thompson in 1999. Appellee Joey Laipply testified that he was familiar with repairing gas pipelines and had done repair work himself on that pipeline prior to the damage done by appellants. Yet, Mr. Laipply did not insist at the time that the repair should be dug up, nor did he find fault with any of appellants' explanations of what had transpired. There was also no evidence that appellants misrepresented the nature of the damage or the repair. Mr. Laipply seems to have accepted appellants' explanation of what happened and then hoped for the best. These are not the types of facts that support either a finding of negligence or support the tolling of the statute of limitations through the application of the discovery rule. In fact, given the nature of natural gas, it seems that any reliance on appellees' part may have been distinctly unreasonable.

{¶ 46} The majority also relies on the fact that the pipeline was reburied before appellees had a chance to see the damage or the repair. Although this is true, it

does not change the basic method of applying the discovery rule in this case. Appellants told appellees what had happened and, thus, appellees discovered the injury when they were told about it by appellants. There is nothing in the discovery rule that would toll the statute of limitations until the injury is *visually* discovered. If you discover the injury by hearing about it or reading about it, you have still discovered the injury. Even if appellees had filed a brief in this case, it would be difficult to see how they could ignore the basic fact that appellants told them what had happened at the time the damage and repair took place.

{¶ 47} For all these reasons, I would apply our usual interpretation of App.R. 18(C) and sustain appellants' unopposed assignment of error. The trial court's judgment should be reversed and judgment entered for appellants.